Good morning. We have four appeals that are scheduled for oral argument this morning. And the first is the United States of America v. Mitzi Bickers. And Marissa Helene Goldberg is here for the appellant Bickers. Tiffany Renee Johnson is here for the United States. And Ms. Goldberg, you may begin your argument. In the trial of this case, the government and the trial court placed unnecessary and improper hurdles in the way of what should have been guarded as a fair and truth-seeking endeavor. Despite early and repeated challenges by the appellant, the government plowed ahead with seeking a conviction for four counts of wire fraud, for which they now concede was an error, were never in fact crimes, and have now moved to dismiss post-conviction. And despite strong and well-founded evidence to the contrary, the trial court allowed the prosecution's main witness to testify untruthfully, and not only did not require the government to correct the false statements, as the law requires, instead hamstrung the defense by not allowing the appellant to impeach or offer the contrary evidence for the jury's consideration. Those massive errors create such insurmountable hurdles for the defense, for which a fair trial could not have been had, and a new trial must be the only cure. These evidentiary issues that you raise, we're reviewing for an abuse of discretion, and we're also, don't we also apply harmless error review to these issues? Let me finish the question. So when I look at the evidence in this case, it seems to me it's pretty overwhelming evidence. But when you add the testimonial evidence and the documentary evidence, the testimony by Elvin Mitchell and Charles Richardson, that they paid bribes to Ms. Vickers in return for these government contracts, when we look at overwhelming evidence, how do you get around that? Even if with regard to these issues that you raise individually or collectively, they have merit? Thank you for that question. And specifically, I'd like to address the standard of review as it pertains to the NAPIU-Giglio violation that we believe occurred in this case. Because that was a due process violation, it is akin to prosecutorial misconduct. And therefore, we contend that this court should review that issue de novo. And I'd like to address that particular issue this morning. As I stated a few minutes ago, that the government allowed the main witness, as the court mentioned, ER Mitchell, to testify untruthfully. What was the untruthful part of it? He was asked whether he recalled certain circumstances. He said he didn't recall. He was asked or it was alleged that he was paid for his cooperation with the FBI, but I don't believe there was any evidence actually introduced of that. So what was the lie? So specifically, I'd like to point the court to, in the record, document 245, page 103. Specifically, when Mr. Mitchell was asked whether or not he met with agents every three months. And the important part here is the scope and timing of his cooperation. So he did cooperate in this case, but he also was a past cooperator in earlier investigations. And the defense had evidence that was presented through the normal discovery process from the government in his cooperation file, that Mr. Mitchell was a cooperator up through 2012. So from 2006 through 2012, Mr. Mitchell was a cooperator with the government on other investigations. And the important point to that is that the allegations in this case alleged to have begun in 2010. So if the cooperation file was allowed to come in, if Mr. Mitchell's statements about the timing of his cooperation were to be convicted or corrected by the government, or the defense was allowed to correct those, that would have allowed the jury to consider that Mr. Mitchell was a cooperator two years into the pendency of this case. And what is important there is that not only does it impugn his credibility, which is an important issue as we look at Giglio and some of those cases, but not only that, it not only impugns his credibility, but also it impugns the government's case. Well, there's a role for the district judge to play under Rule 403 to make sure that there's not confusion of the issues and those sorts of things. Mr. Mitchell was on the witness stand for hours and he was thoroughly cross-examined. And the judge was very lenient, it seems to me, when you look at the trial transcript in permitting efforts to impeach Mr. Mitchell's credibility. So again, I mean, this is an issue that we're reviewing for an abuse of discretion. This is just a part of his testimony that the defense is finding issue with. He was thoroughly cross-examined for hours on the witness stand. And I would contend that, again, we believe that standards should be a de novo review, but I would point the court to NAPIW itself. Because the court in NAPIW specifically says that even if the falsehood bore on the witness's credibility, that the issue is the lie itself. That allowing the witness to testify untruthfully, it undermines and circumvents the truth-seeking feature of a trial that it was supposed to be there. So if the government knows that Mr. Mitchell is a cooperator, it does not, into 2012, it does not matter that we're allowed to question him about other things, which is true. I mean, he was cross-examined extensively. But because we were prevented from questioning him about that particular subject, and the importance of that is that Ms. Biggers was charged in a conspiracy with Mr. Mitchell. And that conspiracy was alleged to start in 2012 into 2010 into 2012. If Mr. Mitchell is a cooperator for two years, as was prevented from the jury from hearing, into that, then the jury may very well believe that a conspiracy did not exist at all. So it not only goes to his credibility, and we were able to attack his credibility, that's true. Is it propensity evidence? Is it propensity evidence that you're seeking? No, it's not propensity evidence. And I think that's where the Court was wrong to some degree, because I think the Court considered it under a 608 analysis, and it really wasn't that. That's really not the purpose of the evidence there. But the crux of the issue is that it was an untruthful statement. So not only did he — was allowed to say that he did not meet with government after a certain period of time, specifically also when questioned about his directives by the agents. So the Quarters and Files specifically laid out that he was supposed to bribe government officials. The case that was before the jury in this case was a bribery case. So allowing him to say, no, that didn't happen, when the government and the defense well knew that we had a document that Mr. Mitchell had signed from the agents having met with him and his directive, and he acknowledged it, and that document not allowed to be introduced into evidence. But not only that, Mr. Mitchell not being able to be further questioned about that, again, it really circumvents the truth-seeking function of the jury. So it is of no consequence that Mr. Mitchell was allowed to be cross-examined about other issues, which he was. But he was — I'm sorry, go ahead. Go ahead. I was just going to say, he was pretty extensively cross-examined about his cooperation with the FBI, though. Yes. And then he was, and there was some information regarding that given to the jury. But again, it goes to the timing. And that really is the ultimate issue. Even though — So just to be clear, I'm understanding. You don't take issue with how thoroughly he was cross-examined about his cooperation with the FBI. Your problem is those two years. Well, I think that goes to the NAPIU issue. And I think we enumerated — But can you just confirm for me that that's correct? Yes. So the two specific statements that he was allowed to state to the jury, uncontroverted, was regarding timing and regarding his directive to bribe public officials. Those are the two uncontradicted statements that were allowed to be given to the jury, and the defense was hamstrung from questioning him or offering evidence to the contrary, even though the government knew that that was true. And then I have to go back to the NAPIU issue here, because the government knew that was a lie. And the burden really falls on the government there. As the Court knows from the standard — The government knew what was a lie? When he said that he did not meet with the agents every three months. They had the file. This was part of the cooperation file that they gave to the defense through the discovery process. And this was addressed in the transcript. The NAPIU issue was litigated in the trial. But the government knew that Mr. Mitchell had lied and did nothing to correct it. And that really is the heart of the issue. It's a due process violation. The Court, in U.S. v. Horner, states that if a witness willfully lies under oath, the government knew and failed to correct the lie. Then the third issue we have to talk about is materiality. And that's where the government gets it wrong in their response brief. They said that it could be a harmless error if it's material. That's not true. Let's move on to the — If the wire fraud convictions are out, then how's that — and so if the case goes back, how's that affect the sentence? Yes, and thank you. So the government contends that a resentencing is sufficient. We contend that a new trial is necessary because of the prejudicial spillover that occurred by the four wire counts, fraud counts being dismissed. Ms. Bickers was convicted of nine counts. The government has now conceded and moved to dismiss four of those wire fraud counts. The two factors under U.S. v. Horner — If he doesn't get a new trial, how's that affect the sentence if the wire fraud convictions are out? What would happen on remand with regard to his sentence? Well, at that point, because the wire fraud counts were the counts that drove her sentence as the highest sentence, she would be subject to a reduced sentence at that point, given the statutory maximums for the other counts. So her sentence would be reduced at this point because of the 10-year statutory maximum on the other counts of conviction. But we would contend that a new trial is necessary based on those because there's prejudicial spillover from the use of that evidence in this case, and the jury improperly relied on that evidence. You raised that issue in your reply brief, and our precedent says that you get that sort of issue is raised — is waived unless you raise it in your initial brief. You didn't make that argument in your initial brief. And that is correct because the government did not move to dismiss those counts until — we did not know that was going to happen. We had raised the salary theory on the wire fraud counts pre-trial through the trial. The government then conceded in their response brief that they were going to dismiss those counts. So we were unable to raise that in our initial brief. It was an impossibility. We did respond to it in our reply brief. But at this point, the government has already moved to dismiss those counts in the lower court pursuant to Rule 37. There is an indicative ruling. But we do contend that a new trial is absolutely necessary because there were five witnesses and four years of ethics disclosures that were submitted to the jury for those wire fraud counts that the jury should not have considered. Before you sit down, let me just ask you one question about Cortina Alexander. Trial counsel did not know that she was going to invoke her Fifth Amendment, right, before opening statement? That is correct. And as I was one of the trial counsel, she did show up to the first day pursuant to the subpoena and indicated that she was ready to be on call and would testify. And that did not occur until after opening statement that her counsel indicated she would invoke the Fifth Amendment. All right. We will ask the government about that. Thank you, Ms. Goldberg. Ms. Johnson. Good morning and may it please the Court. I am Tiffany Johnson on behalf of the United States. The government's case against Mitzi Bickers consisted of 36 witnesses and thousands of pages of financial and business records over the course of 10 days. One of those witnesses was E.R. Mitchell. And as the Court has already noted, the Court found that Mr. Mitchell's memory lapses and lack of understanding of the questions being proposed to him on cross were not a violation of Giglio or NAPIU. So can I just ask you specifically about what your friend on the other side of the aisle was arguing? And she argues that there are two problems with where her cross examination was disallowed. One is the amount of time that Mr. Mitchell cooperated with the government. And the other one is that they weren't allowed to talk about the fact that he was permitted by the government to attempt to bribe public officials. And I just wanted to hear your response to those two. So the scope of Mr. Mitchell's cross on those issues, they were in fact allowed to ask Mr. Mitchell about how long he was cooperating with the FBI. And in fact, at one point... Right, but I think her argument is that when he said how long he was cooperating and it turned out not to be accurate, they weren't allowed to show that it wasn't accurate through the plea agreement. Right. So the court ruled that they could not bring in extrinsic evidence to challenge a no response from Mr. Mitchell. To the extent that he indicated he didn't remember, there was no effort by the defense to refresh his recollection. But the rule on extrinsic evidence is that you can't bring it in to prove a witness is lying under Rule 608 about a matter of untruthfulness. So we contend that the district court did not abuse its discretion in not permitting the defense to bring in extrinsic evidence as to that FBI file. And the district court in making its decision about whether or not Mr. Mitchell lied about his cooperation with the FBI, this was not an in the moment decision by the district court. The district court pulled the transcript of Mr. Mitchell's testimony and he reviewed the entire 250 page FBI file over the weekend and then issued a written order that was nine pages going through all of the allegations that the defense made. And in doing so, the court said it was reasonable for the government to interpret the FBI file the way it did because of those inconsistencies in the FBI file. We saw that there was an express statement in the FBI file that Mr. Mitchell's testimony ended in September of 2007 and that there was no substantial cooperation beyond that point. And while there were, the government admits there were quarterly reports, there were annual reports indicating that that file was kept open. But even in those annual reports, we see supervisors dropping a note at the bottom of those and the file either needs to be updated to include those contacts or it needs to be closed. And we see that over and over and over again. So Mr. Mitchell saying that his cooperation ended well before any of the conduct that's alleged in this case is consistent with what the supervisors are saying in that file. And it just wasn't the government's belief that Mr. Mitchell was lying based on what was contained in that file. And so for that reason, and also, Your Honor, the court mentioned that this was reviewed for harmless error. And there is a mountain of evidence, as the court has already noted. And so... But Mr. Mitchell was your key witness. So for purposes of Ms. Bicker's appeal, it does make sense that she would focus on him. So my question in terms of the challenges they've raised is how was that not material when the whole case was about a conspiracy with Mr. Mitchell? Yes, Your Honor. So what the district court determined about the materiality of it, at least as to the NAPIU issue, was that any potential misstatements by Mr. Mitchell was not material because there was a mountain of cross-examination that got to the very issues that the defense wanted to raise with this FBI file. They got to expose that he was a cooperator with the government, that he had gotten himself in trouble and that was why he was cooperating with the government, that he had lied to the FBI. And so the court said there's plenty of evidence here for the jury to conclude that, one, Mr. Mitchell potentially had a bias for the government because he had cooperated with the government in the past over a period of time, and also that he had an incentive to cooperate to get a better deal. So all of that came out in cross-examination extensively. It came out in direct and it came out on cross. So the idea that going back and forth with Mr. Mitchell about whether his cooperation extended when he said that was not his recollection of what happened is not material because the jury heard plenty of evidence that he had lied to the FBI, that he had a bias for the government, and that he had an incentive to provide helpful testimony. Can I turn your attention for a moment to the sentencing? So four of the counts were dismissed, as you know, and here's my concern. When the court sentenced Ms. Bickers, it gave two reasons for its sentence. And one of the two reasons was that she was convicted of so many counts, and at that time she was convicted of nine of 12 counts. And after the dismissal of the four, she's convicted of five of the 12. So whereas previously she was convicted of 75 percent, now it's less than half. Why shouldn't we send it back for resentencing, given the court's statements for its sentence? Absolutely, Your Honor. And so to answer your question, the court should send it back for resentencing, one, because the counts have not yet been dismissed. The government has moved to dismiss those counts, but the district court did not have jurisdiction at the time that we did that. The district court has indicated that he would dismiss those counts, so we fully expect that to happen. But once the counts are dismissed, the case will need to be resentenced, just based on the fact that the wire fraud counts had a higher statutory max, and the other counts of conviction, as it stands, with the counts running concurrently, cannot sustain the 168 month sentence. So you would agree that it would be a full resentencing? So we agree that a resentencing needs to occur. But as to the factual findings of the court on the enhancements in this case, whether Ms. Bickers was a high-level decision maker, whether she should have received a role enhancement, and the overall scope of the conspiracy, we believe that those issues are ripe for the court to decide. The record is set on those issues. And so none of those issues should be relitigated at sentencing. Of course, she argues that she's entitled to a new trial because the wire fraud counts infected the other counts. What is your response to that? Your Honor, the government agrees that, with the court, that this issue was raised for the first time in a reply brief. But in fairness, she couldn't have raised it any earlier. I mean, you all didn't move to dismiss until after she filed the first brief, so. Well, Your Honor, I disagree that it couldn't have been raised before. I mean, all of the circumstances for whether or not these fraud counts spilled over into the rest of the trial, I mean, they've been arguing that they should have been dismissed from the very beginning of the case. They've argued that the district court erred in not dismissing these counts from the very beginning of the case. So all of the information was there for them to say these counts were never appropriate. And because the jury was allowed to hear them, that spilled over into the rest of the trial. But even so, I mean, you know, she's spending part of the brief arguing that they should be dismissed. That's obviously and understandably the focus of the brief. When you all go ahead and dismiss them, which, you know, I'll give you credit for doing, why isn't it fair for her then to say, okay, well, now we have sort of a new posture and we're going to address the new posture that we have? I mean, maybe the better thing to do would be to just move on to the substantive part of the argument. Yes, Your Honor. And on the prejudicial spillover argument, the record does not support any prejudicial spillover in this case. So when we look at the Prosperi decision, there's two things that this court needs to look at. The first is whether there was evidence that was admitted at this trial that would not have been admitted but for the dismissed counts. The only piece of evidence that would not have been relevant is the interstate wire access witness from Wells Fargo Bank. That witness testified for all of 10 minutes about the fact that these wires crossed over state lines. All of the other evidence that came in in relation to wire fraud was also absolutely relevant and prohibitive to the bribery conspiracy in this case and the tax counts. Some of the things that the defense has pointed to is the ethics evidence, her obligations under the ethics code. And that evidence is relevant to Ms. Bicker's corrupt intent, her knowledge of her obligations to report this additional income, both to the city and on her taxes. She did neither. And all of that reflects an effort to cover up the money that she was receiving, but also her knowledge and her intent as it relates to the bribery scheme. We also heard from witnesses about Ms. Bicker's salary and what would happen under the ethics rules if she didn't report this information to the city. And again, all of that information is relevant context for the bribery counts in this case. So as to the first element, that is not met here. And as to whether there was evidence that was improperly relied upon by the jury causing prejudice, the jury sifted through this evidence over a day and a half. And we see what this court has referred to as a discriminating acquittal. So the jury could sift through this evidence and determine whether Ms. Bicker's was guilty as to one and not guilty as to another count. The evidence was not inflammatory. There's no indication that Ms. Bicker's altered her defense strategy. She would have still had to prepare to cross for all of these witnesses except the interstate wire witness. And the strength of the evidence on the remaining counts, as the court has already noted, is overwhelming. And so which counts did the jury find her not guilty of? That was count two, Your Honor, and count three and count 11. Okay, all right. Well, let me ask you about something else now. Why was Katina Alexander in the courtroom during opening statements? Was she on the government's witness list? No, Your Honor. So Ms. Alexander, the fact about Katina Alexander as we understand it is that Ms. Alexander showed up in response to a defense subpoena on the first day of jury selection. She was not in the courtroom. She was waiting outside. The government did not know she was there. But the record... She was there at the behest of the defendant and not the government? That's correct, Your Honor. Okay, all right. And she was never, she was not in the courtroom during opening statement? That is correct, Your Honor. She was not in the courtroom. So then when did her, my understanding is that her attorney thought that the government had sent the subpoena and had reached out to the government to explain she was going to plead the fifth. So what is the timing of that, I guess? Yes, Your Honor. So there was some discrepancy around whose contact information or whether there was contact information on Ms. Alexander's subpoena. So Ms. Alexander's attorney reached out on March 8th, which was two days before the trial started in this case, before opening statements in this case, and reached out to an AUSANR office and said, my client intends to plead the fifth. Does she need to show up in response to your subpoena? And we weren't aware that there was a subpoena because we didn't issue a subpoena and we let them know that. And he indicated on that call with AUSA Davis that his client intended to assert her Fifth Amendment right not to incriminate herself. And all of that plays out on the record. The district court called this attorney to the stand, had him testify. We verified the call records showing the timing of all of this. And all of it happened before any statement by the government was made about Katina Alexander. She could have changed her mind, though, couldn't she? That is absolutely true, Your Honor. There's nothing in the record indicating she did. And by the time her attorney appeared, we were well into the trial. And he indicated that his advice had not changed to his client over the course of his three-year representation and that she had always intended to plead the fifth in this case. And so if there are no further questions, I will rest on our briefs and ask the court to vacate the wire fraud counts, remand for a limited resentencing, and affirm the remaining convictions. All right. Thank you, Ms. Johnson. Ms. Goldberg, you have reserved some time for rebuttal. Thank you. Your Honor, I'd first like to address the NAPIU issue, because I think it is continuously being misframed by the appellee here. The crux of NAPIU is that it is the government's responsibility. It is not the trial court's responsibility. And we certainly contend that the trial court erred in making the rulings that it did. But the crux of NAPIU is that it is the government's responsibility. Determination that the government's interpretation of the FBI file was reasonable was reasonable, I guess, right? We'd have to disagree with you. And your Honor, I contend that the file is the file. The documents stated what they did, and the government offered no evidence to the crime. But we'd have to agree that it was an abuse of discretion for the district court to find that the file could be reasonably construed as the government construed it. And again, I contend and believe that it was the file was the trial court's responsibility. Let me just ask you this. Would you agree with how I just phrased the question? In terms of the trial court's ruling in Doctrine 200, I agree. But in terms of the responsibility at trial regarding the testimony and the defense's responsibility to impeach and or the government's responsibility to correct. But here's the thing, right? If it wasn't an abuse of discretion for the district court to have concluded that, if it wasn't clearly erroneous, we've got sort of two things going on here, right? If it wasn't clearly erroneous for the district court to have concluded that the government's construction of the FBI file was reasonable, then there's no lie, right? I mean, that's the problem here. And I would say that it was absolutely clearly erroneous as well, because the file stated what it did. It referenced particular investigations that Mr. Mitchell was engaged in all the way up until November of 2012. There was no ambiguity there. This was an abuse of discretion, Your Honor. And also the government knew that to be true. They offered no evidence to the contrary. They could have called the agent. They could have called Mr. Mitchell's handler to the stand and say, okay, testify. When did Mr. Mitchell's cooperation end? They didn't do that. The only evidence that they have conceded is authentic because they rely on those same documents. The only evidence that was before the court was that Mr. Mitchell cooperated until November of 2012. So I would contend that it would be an abuse of discretion for the court to find the way it did, but also contend that the court should look at the situation de novo for the government's failure to correct Mr. Mitchell as he continually testified untruthfully. And so for that, Your Honor, I believe that the two issues, the issues of the dismissed wire fraud counts and the navigating violation raise significant questions of fundamental fairness here. There was a due process violation. Four of the nine counts have now been dismissed post-conviction. Now when there are questions of this magnitude, there is only one remedy that should happen, and that is a vacated conviction and a new trial. All right. Thank you, counsel. The next case is the United States of America v.